# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) DOCKET NO.: 3:17-CR-181 |
| | ) |
| v. | ) **FACTUAL BASIS** |
| | ) |
| JORDAN LEE MOORE | ) |
| | ) |

NOW COMES the United States of America, by and through Jill Westmorland Rose, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

This Factual Basis does not attempt to set forth all of the facts known to the United States at this time. This Factual Basis is not a statement of the defendant, and, at this time, the defendant may not have provided information to the United States about the offenses to which the defendant is pleading guilty, or the defendant's relevant conduct, if any.

By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement. The parties also agree that this Factual Basis may, but need not, be used by the United States Probation Office and the Court in determining the applicable advisory guideline range under the *United States Sentencing Guidelines* or the appropriate sentence under 18 U.S.C. § 3553(a). The defendant agrees not to object to any fact set forth below being used by the Court or the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a) unless the defendant's right to object to such particular fact is explicitly reserved below. The parties' agreement does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have agreed not to object and which are relevant to the Court's guideline computations, to 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

## INTRODUCTION

1. On or about March 30, 2017, JORDAN LEE MOORE ("MOORE"), defendant herein, on interfered with airport security personnel, who had security duties within the Charlotte Douglas International Airport (CLT), located in Mecklenburg County, within the Western District of North Carolina. MOORE as an employee of American Airlines in Winston Salem, North Carolina, had certain privileges with respect to flights on American Airlines. These privileges did not excuse MOORE from compliance with security and screening protocols at CLT.

## BACKGOUND

2. CLT is an international airport serving commercial airlines and American Airlines' second largest hub. CLT has five concourses with 97 gates. It is the fifth busiest airport in the United States with over 650 daily departures and nonstop service to 165 destinations. CLT served with over 44 million passengers in 2016. CLT is owned and operated by the City of Charlotte, North Carolina. The City of Charlotte employs personnel to operate CLT.

3. The Transportation Security Administration (TSA) employs personnel at the CLT who are charged with the screening of passengers, baggage, equipment and cargo to ensure compliance with guidelines and regulations set by the U.S. Department of Homeland Security (DHS). The duties of a Transportation Security Officer (TSO) include, but are not limited to, checking luggage or packages manually or screening with x-ray equipment in order to identify hazardous items and keep them from being loaded or carried onto aircraft. TSOs screen passengers at security checkpoints. TSOs identify potential security risks by observing the behavior of travelers as they move through terminal areas. Responsibilities also include scrutinizing ticketing and identification materials to recognize potential security risks. TSOs screen passengers going through security checkpoints by using any combination of visual observations, pat-down searches, metal-detector screening, explosive trace detection, and x-ray devices. They report specific findings or incidents to management or law enforcement to help identify weaknesses in established protocol or flaws in terminal and equipment design.

4. The Charlotte Mecklenburg Police Department (CMPD)—which is also a department of the City of Charlotte—assigns law enforcement officers to CLT. CMPD officers work in conjunction with TSA personnel in the screening areas of CLT and elsewhere. TSA personnel are not authorized to make arrests, but must rely on CMPD officers for enforcement.

5. American Airlines (AA) is a commercial airline operating from CLT, its second largest hub. AA employs security personnel at CLT to protect its passengers, employees and assets at CLT. A person known to the grand jury as the "AA Security Investigator" is employed by AA Corporate Security and performs security duties at CLT.

6. One benefit of employment with AA includes free or discounted air fare on AA flights. However, AA personnel flying on AA flights must comply with AA policies as well as federal security and screening regulations. AA security and other managers can deny AA employees flying privileges for failure to comply with AA's conditions of carriage, including refusal to provide identification upon request and disorderly, abusive or violent conduct.

7. AA issues company identification to its employees. AA employees working inside the secure areas of the airport must also possess a Secure Identification Display Area (SIDA) badge. AA company identification does not exempt AA employees from federal screening procedures.

8. TSA PreCheck is a security screening program which provides eligible, low-risk travelers with expedited security screening at participating US airport locations and for most international itineraries. Participants must submit an application and successfully pass an in-person appointment which includes a background check and fingerprinting. Participating airlines print a TSA PreCheck indicator on boarding passes of eligible TSA PreCheck passengers. In addition to the indicator, TSA PreCheck eligibility is embedded in the barcode of the boarding pass. Once the boarding pass is scanned at an airport checkpoint, a TSA Officer may refer a passenger to a TSA PreCheck lane. A passenger without a valid boarding pass with TSA PreCheck embedded in the barcode, cannot access the TSA PreCheck lane.

## MOORE'S FIRST ALTERCATION AT CLT

9. On or about March 30, 2017, at approximately 17:25 hours, MOORE approached the TSA Pre-Check Lane at CLT B Checkpoint with a boarding pass that failed to indicate a TSA PreCheck designation. MOORE identified himself as an AA employee. MOORE became irate when he was advised by a TSO and later a Supervisory Transportation Security Officer (STSO) known to the grand jury as STSO # 1 that he could not enter the TSA PreCheck Lane without a valid boarding pass with TSA PreCheck designations. MOORE moved close to STSO #1's face, called him a "bitch ass n****" and stated he would "kill" STSO #1 and "kick his ass." During this time, MOORE interfered with the performance of STSO #1's security duties and lessened the ability of STSO #1 to perform security duties.

10. MOORE left CLT B Checkpoint and walked towards CLT C Checkpoint and the stanchions location. STSO # 1 followed MOORE, as a safety precaution. MOORE left the stanchions at CLT C Checkpoint and approached STSO #1 who was speaking with a CMPD Officer. MOORE again called STSO #1 "a bitch." The CMPD officer ordered MOORE to leave CLT.

11. MOORE did not leave CLT, but instead entered the TSA security lane at CLT D Checkpoint. At this point a TSA Transportation Security Manager (TSM#1), joined by STSO #1 and an AA Security Employee proceeded to observe MOORE at the CLT D Checkpoint. MOORE was then approached by the AA Security Employee, and asked to provide identification. MOORE was wearing what appeared to be an AA company identification badge, but the AA Security Employee could not see the photograph or name. After repeated attempts to speak with MOORE, MOORE indicated to the AA Security employee that he would not speak with him. The AA Security Employee told MOORE: "I'm officially notifying you, you cannot fly on American Airlines today or any other day until we resolve this matter."

12. Two CMPD officers, observing the conversation between MOORE and the AA Security Employee, also instructed MOORE he was not allowed to travel from CLT. MOORE also refused to provide identification to the CMPD officers. As the CMPD officers were escorting MOORE from CLT D Checkpoint, MOORE walked towards STSO #1 and

4

again called him a "bitch ass ni***." MOORE then left the scene, departing down the stairs to the baggage claim area and boarded a departing bus.

13. During this first altercation at CLT, STSO # 1 felt threatened and had safety concerns for himself, as well as other TSA Officers and nearby CTL passengers. While STSO#1 was dealing with MOORE and notifying CMPD officers of MOORE's actions; he was the only supervisor on duty at the B Checkpoint, had to abandon his station and designate a fellow co-worker to take charge of his duties. Subsequent to MOORE'S departure, airport employees were advised to 'be on the lookout' for MOORE, in the event he returned. They were provided his picture, which included his clothing.

## MOORE'S SECOND ALTERCATION AT CLT

14. MOORE returned to CLT at approximately 19:30 hours on March 30, 2017. Upon his return to CLT, MOORE again approached CLT D Checkpoint where a Lead Transportation Security Officer (LTSO) #1 was assigned Travel Document Checker (TDC) duties. LTSO #1 recognized MOORE from the aforementioned photograph that had been provided to all checkpoint stations. The photograph identified MOORE, who was still wearing the same yellow shirt as he wore during his first altercation at CLT, as the individual who had previously caused security concerns CLT Checkpoints earlier that day. As LTSO #1 called on his radio for a TSA supervisor; he asked MOORE to "wait a moment" and to show him identification. MOORE ignored LTSO #1's orders and proceeded to the baggage screening area of CLT D Checkpoint. The previously mentioned Transportation Security Manager (TSM #1) approached MOORE as he placed his baggage on the conveyor belt of the screening device. TSM #1 reminded MOORE that he was not allowed to pass through the checkpoint and was not allowed to fly with American Airlines that day. TSM #1 asked MOORE to leave the D checkpoint line. MOORE replied, "I am not going to do a f****** thing. I am going in. Just watch me."

15. CMPD officers, already at the CLT D Checkpoint, then instructed MOORE he was not allowed to pass through the checkpoint. MOORE ignored these instructions and

continued to place his personal items into a bin to enter the checkpoint stating, "You cannot stop me, I am an airline employee." A CMPD officer prevented the bin from entering the checkpoint, at which time MOORE attempted to snatch the bin away from the Officer. MOORE told the CMPD officers "F****g leave me alone" and "Don't touch my stuff b****." The CMPD officers then attempted to arrest MOORE. MOORE refused the officers' commands, continued cursing at the officers, and violently resisted arrest. After several officers subdued MOORE, he continued his physical resistance and cursing even after he was placed in a police car.

16. Numerous TSA employees were assigned to CLT D Checkpoint during the second altercation with MOORE. Subsequent to LTSO #1's radio call for assistance, additional TSA employees responded to the D Checkpoint. During, and as a result of, the second altercation, the CLT D Checkpoint was closed for the safety of the passengers, who were redirected to other CLT checkpoints.

**JORDAN LEE MOORE** judicially admits knowingly interfering with airport security screening personnel, interfering with the performance of the employee's duties or lessening the ability of the employee to perform those duties, in violation of Title 49, United States Code, Section 46503.


JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

_____
MICHAEL SAVAGE
ASSISTANT UNITED STATES ATTORNEY

_____
SANJEEV BHASKER
ASSISTANT UNITED STATES ATTORNEY


**Defendant's Counsel's Signature and Acknowledgment**

    I have read this Factual Basis, the Bill of Indictment, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Bill of Indictment, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis with the exception of those facts to which I have specifically reserved the right to object, and understands that it may be used for the purposes stated above.

_____  DATED: 11/21/17
Miranda Mills, Attorney for Defendant

7

Case 3:17-cr-00181-RJC-DCK   Document 32   Filed 11/21/17   Page 7 of 7